IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LISA M. WHITE,

    Plaintiff,

v.                                              Civil Action No. 3:17-cv-820

CARRY-ON TRAILER, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF No. 25). Lisa M. White ("White") seeks to amend the Complaint to add several factual allegations in support of her hostile work environment and retaliation claims. For the reasons set forth below, the motion was denied. See ECF No. 54.

## BACKGROUND

### A. Factual Background

The dispute here relates to interactions between White and her direct supervisor, James Wilson Dean ("Dean"), while they were employed at Carry-On. White had originally worked for Carry-On from 2005 to 2006, and was re-hired on or around June 13, 2016 to serve as an assembly line worker at the company's manufacturing facility in Montross, Virginia ("the Montross Plant"). Dean was employed as a plant supervisor at that

location from February 25, 2016 to October 25, 2016. Pursuant to Carry-On's direction, Dean acted as White's direct supervisor between June 13 and October 17. Compl. (ECF No. 1) ¶¶ 20, 31-33.

According to White, Dean routinely made unwanted sexual advances and sexually explicit or degrading comments towards female assembly line workers at the Montross Plant. For example, Dean sometimes slapped female employees on their buttocks when they were working, and placed stickers on their backs and buttocks. On one occasion, he picked up an employee, Ms. Ochoa-Chavez, with his hand on her crotch area, leading Ochoa-Chavez to submit a complaint to Greg Moon ("Moon"), Carry-On's human resources manager. Carry-On allegedly failed to conduct a reasonable investigation into that conduct and did not discipline Dean. Other female workers similarly complained about Dean's sexual harassment, but Carry-On did not investigate those complaints and took no preventive or corrective measures against Dean. Id. ¶¶ 21-30. In fact, White claims, Carry-On lacked a coherent sexual harassment policy, as the one it had contained material inconsistencies. Id. ¶¶ 14-19.

White in particular became a frequent target of Dean's inappropriate actions. During the period in which Dean supervised White, he often talked in crude terms about her

buttocks, looked at her in a sexually suggestive manner, and intentionally touched or rubbed her buttocks and breasts or undergarments. In addition, when White rebuffed Dean's advances, he allegedly treated her less favorably than another female employee, Vanessa Becerra ("Becerra"), who "welcome[d]" that conduct. Specifically, Dean assigned White to less desirable or more difficult work on the assembly line or elsewhere in the Montross Plant, and he continued to insult and display sexually charged behavior at her. He also threatened to switch White to the night shift, which he knew would interfere with her family responsibilities. Id. ¶¶ 34-43, 46.

On or around October 17, 2016, White submitted a formal complaint and report about Dean's behavior to Moon and the Montross Plant's general manager. Carry-On terminated Dean's employment on October 31. The next day, Carry-On reassigned White to the night shift. White contends that this reassignment was retaliation for complaining about Dean's inappropriate conduct, which had only occurred because Carry-On had facilitated a hostile work environment. Id. ¶¶ 47-51.

As a result, on February 17, 2017, White filed a Charge of Discrimination against Carry-On with the United States Equal Employment Opportunity Commission ("EEOC"). Id. ¶ 7; see also

EEOC Charge (ECF No. 1-1). The EEOC Charge contained essentially the same allegations outlined above, although it described Dean's vulgar comments to White in more detail. In particular, as in the Complaint here, White's retaliation claim was predicated solely on her assignment to the night shift. See EEOC Charge at 2 ("After Dean's employment ended, my supervisors temporarily switched me to the night shift. I believe this shift change was retaliation for me reporting Dean's conduct.").

**B. Procedural Background**

White first sued Carry-On and Dean in Virginia state court on August 25, 2017 ("the State Action"). That Action was based on the same facts asserted here and in the EEOC Charge. After the parties had conducted some discovery, including Carry-On's production of White's entire personnel file, the State Action was stayed pending resolution of this case. Def. Opp. (ECF No. 27) at 2 & n.1.

On or around September 28, 2017, the EEOC responded to the EEOC Charge by issuing a Dismissal and Notice of Suit Rights. Compl. ¶ 9. Then, on December 12, White timely filed this Complaint pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). See 42 U.S.C. § 2000e-5(f)(1). She asserted:

4

(1) A sexually hostile work environment claim, under 42 U.S.C. § 2000e-2(a)(1), based on Dean's conduct towards White and other female employees and Carry-On's failure to address or punish that behavior, Compl. ¶¶ 55-62;

(2) A sexual harassment/quid pro quo claim, under 42 U.S.C. § 2000e-2(a)(1), based on Dean's less favorable treatment of White compared to others, like Becerra, who did not resist Dean's sexual advances, id. ¶¶ 63-66; and

(3) A retaliation claim, under 42 U.S.C. § 2000e-3(a), based on Carry-On's reassignment of White to the night shift after she reported Dean's sexual harassment, id. ¶¶ 67-71.

The Court entered its standard Scheduling Order on February 23, 2018. See ECF No. 11. That Order required the parties to file any motions to amend pleadings within fifteen days—that is, by March 12. It further indicated that "[a]ny such motions filed thereafter will be entertained only upon a showing of good cause." Id. ¶ 2. The parties subsequently engaged in written discovery. After an initial pretrial conference, the Court set

5

the Final Pretrial Conference for July 12, and the trial to begin on July 24. ECF No. 15.

White moved to amend the Complaint on May 4, 2018. Besides a correction of one individual's name, the only significant changes in the Proposed Amended Complaint are the addition of: (1) two factual allegations about Dean's disciplinary write-ups of White in July 2016, Proposed Am. Compl. (ECF No. 25-1) ¶ 52; (2) one allegation about a Carry-On write-up in January 2017, after White complained about Dean's behavior, id. ¶ 53; (3) nine allegations about Carry-On's write-ups or increased scrutiny of White's work between February and April 2017, after White filed the EEOC Charge, and White's subsequent termination in May 2017, id. ¶¶ 54-59; and (4) modifications to White's hostile work environment and retaliation claims to refer to those purported adverse actions, id. ¶¶ 69, 77-79.

Based on the date of the Final Pretrial Conference, discovery closed on May 23, 2018. See Pretrial Schedule A (ECF No. 11) § III(C). Carry-On then moved for summary judgment on May 25, relying primarily on written discovery and the deposition testimony of White, Ochoa-Chavez, Moon, and two other Carry-On employees.

## DISCUSSION

### I. Legal Standard

Motions for leave to amend pleadings before trial are normally governed by Rule 15. Under that rule, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Accordingly, leave "'should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would . . . be[] futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Consistent with that standard, "amendments of pleadings are particularly inappropriate, absent exceptional circumstances, once discovery has closed." Smithfield Foods Inc. v. United Food & Commercial Workers Int'l Union, 254 F.R.D. 274, 277 (E.D. Va. 2008) (emphasis in original).

However, the analysis changes when a scheduling order has prescribed a particular deadline for amendments. Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to

7

amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008). Because White sought to amend the Complaint after the Scheduling Order's deadline, she must first show good cause for her late request, as the Court indicated. See Scheduling Order ¶ 2. She then must also establish that amendment is appropriate under Rule 15. See Cook v. Howard, 484 F. App'x 805, 814-15 (4th Cir. 2012) ("[After] the entry of a scheduling order, . . . under Rule 16(b)(4), a party must first demonstrate 'good cause' to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.").

## II. Discussion

### A. Rule 16(b)

"'Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment.'" RFT Mgmt. Co., LLC v. Powell, 607 F. App'x 238, 242 (4th Cir. 2015) (quoting O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155 (1st Cir. 2004)); see also United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007) ("The good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission." (internal quotations omitted)). Good cause exists "only when 'evidence supporting the proposed amendment would not have been discovered

in the exercise of reasonable diligence until after the amendment deadline had passed.'" Kirby v. Richmond Redevelopment & Hous. Auth., No. CIV.A. 3:04-CV-791, 2005 WL 5864797, at *3 (E.D. Va. Sept. 28, 2005), aff'd, 194 F. App'x 105 (4th Cir. 2006) (quoting DeWitt v. Hutchins, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004)). Thus, "[c]ourts in the Fourth Circuit [have] den[ied] leave to amend a complaint . . . where the moving party has been careless in developing his claims or where he has failed to satisfactorily account for his failure to do so." Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d 757, 769 (D. Md. 2010).

White proffers two related reasons for failing to seek amendment before the Scheduling Order's deadline. First, she asserts, the disciplinary actions that are the subject of the new allegations in the Proposed Amended Complaint were not discovered until White received Carry-On's first document production on April 17, and was deposed on April 26. Second, White says, her family responsibilities and long distance from her counsel have made discussions with counsel difficult.

Neither circumstance supports a finding of good cause. White's distance from her counsel has presumably been the same since the original Complaint was filed, and her family

obligations equally pressing, so those factors cannot by themselves explain her substantial delay in seeking amendment. Indeed, she appears to rely on them more to illustrate the difficulty of conferring with her counsel about facts that were only uncovered through discovery that occurred after the amendment deadline in the Scheduling Order.

White's first argument, which concerns that discovery, is also unconvincing. White might very well be able to show good cause if she could not have reasonably discovered the facts in the Proposed Amended Complaint before her deposition and Carry-On's production in April 2018. See Kirby, 2005 WL 5864797, at *3; see also Long v. Blair, No. CIV.A. 2:09-CV-00349, 2010 WL 1930220, at *4 (S.D.W. Va. May 12, 2010) (good cause existed where plaintiff lacked evidence to support new claims before scheduling deadline but moved to amend shortly after discovering evidence). Yet, as she readily concedes, Carry-On produced her entire personnel file on October 17, 2017, during discovery in the State Action. Carry-On notes, and White does not dispute, that such production contained all of her disciplinary records, including those underlying the allegations in the Proposed Amended Complaint. As a result, White could have easily: (1) inserted those allegations into the original Complaint, which

was not filed until December 12; or (2) failing that, moved for leave to amend at any point before March 12, once she realized that certain disciplinary actions in her personnel file could provide further support for her Title VII claims. Instead, she waited more than six months to seek to add that information to the Complaint, which is not a diligent course of conduct. Whether she did so because of a simple mistake or for some other reason is unclear; in either case, the recent discovery in this case is irrelevant because it did not give White any information on which to base her hostile work environment and retaliation claims that she did not previously possess. See Tawwaab, 729 F. Supp. 2d at 769; Whichard v. Specialty Rests. Corp., 220 F.R.D. 439, 441 (D. Md. 2004).

White tries to undermine this conclusion by arguing that Carry-On's recent document production has revealed documents that White has not seen before, either in this case or in the State Action. She asserts that Carry-On had not produced a single e-mail or privilege log in this case before mid-May 2018, and that it did so only after multiple Carry-On employees testified in their depositions about documents that, in White's view, support the new allegations about Carry-On's increased scrutiny and discipline of White. This argument makes little

11

sense. At best for White, Carry-On's questionable discovery tactics might have justified a motion to compel or a motion to continue pretrial or trial deadlines to conduct further discovery. But, even if White is correct that these newly-produced documents support the allegations in the Proposed Amended Complaint, and that Carry-On has failed to produce even more relevant documents that support those allegations, White's proposed amendment is clearly based on <u>other</u> documents that she had possessed since October 2017. That she acquired information after filing her motion to amend that merely confirmed what she already knew to be true does not provide an independent basis for amending the Complaint. Consequently, White cannot show good cause for waiting until early May 2018 to request amendment, and her motion can therefore be denied on Rule 16(b) grounds.

Thus, because White cannot satisfy Rule 16(b), the Court need not confront the subsequent questions of whether her amendment is permissible under Rule 15(a), and whether the Court would lack subject matter jurisdiction over her amended hostile work environment and retaliation claims on administrative exhaustion grounds.

**CONCLUSION**

For the foregoing reasons, PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (ECF No. 25) was denied.

It is so ORDERED.

/s/ *REP*
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 6, 2018

13